```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                       :
                                                            :   Chapter 7
    JOHN CHASE                                              :
                                                            :   Case No. 05-45706
                                         Debtor.            :
------------------------------------------------------------x
Michael R. Varble, Esq.                                     :
                                   Plaintiff                :
                                                            :   Adv. No. 06-01190
            v.                                              :
                                                            :
John Chase                                                  :
                                  Defendant.                :
------------------------------------------------------------x
```

## MEMORANDUM OPINION AND ORDER

**A P P E A R A N C E S :**

Michael R. Varble, Esq.
3324 Lookout Street
Mohegan Lake, NY 10547
*Appearing Pro Se*

John T. Chase
1955 First Avenue, Apt. 227
New York, NY 10029
*Appearing Pro Se*

**MARTIN GLENN**
**United States Bankruptcy Judge**

      The plaintiff Michael R. Varble, Esq. ("Varble") commenced this adversary proceeding against the debtor John T. Chase ("Chase" or the "Debtor") seeking a determination of the dischargeability of a debt under § 523(a)(2)(A) or § 523(a)(2)(C)(I) of the Bankruptcy Code for legal fees for services performed during the Debtor's state court divorce and child custody proceedings pending, respectively in both the Supreme

1

Court and Family Court of Columbia County, New York. The Court conducted a two-day trial on March 1, 2007 and March 30, 2007 during which it heard the testimony of witnesses and received documentary exhibits.[1] The following constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. For the reasons explained below, the Court holds that (1) Varble's prepetition fees are not excepted from discharge pursuant to § 523(a)(2)(A) & (C)(I) of the Bankruptcy Code and, therefore, can be discharged under § 727(b) of the Bankruptcy Code, and (2) Varble's postpetition fees are not dischargeable under § 727(b) of the Bankruptcy Code.

## I.  JURISDICTION

The Court has jurisdiction to hear this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and under the July 10, 1984 "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York (Ward, Acting C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.  BACKGROUND

On October 12, 2005, the Debtor filed a petition under chapter 7 of the Bankruptcy Code. On or about June 22, 2004, the Debtor and Varble entered into a contract for legal services. *See* Plaintiff Varble Ex. A. Under the terms of the contract, the Debtor represented that he would pay Varble an hourly rate of $250 per hour for his legal services in the Debtor's divorce and child custody proceedings pending in the Columbia County Supreme Court and Family Court. *See id*. The Debtor did not stay

---

[1] This matter was tried in conjunction with Roy Lubit, M.D. v. John Chase, Adv. Proc. No. 06-1294.

2

current in paying Varble, ultimately leading to an outstanding balance for pre and postpetition legal services of $124,220.72.[2] *See* Complaint at ¶ 7 (ECF Doc. No. 1).

Aside from the representations contained in the retainer agreement, the Debtor represented to Varble on numerous occasions that he would pay Varble for all legal services and that he had the ability to pay for these services. For instance, after receiving a bill for legal services in March 2005, the Debtor communicated to Varble that he would work on coming current on the outstanding balance. *See* Tr. (3/1/07) at 18.[3] In July 2005, shortly before the start of the custody trial, the Debtor assured Varble that he would be paid out of the proceeds of the sale of the Debtor's marital home in Kinderhook, New York. *Id.* The Debtor also represented to Varble, both after the state matrimonial proceeding and after the Debtor filed for bankruptcy, that he intended to pay Varble for his services. *See* Tr. (3/1/07) at 19, 24. The Debtor ultimately paid $23,350.00 towards Varble's legal fees. *See* Complaint at ¶ 8 (ECF Doc. No. 1).

On January 30, 2006, Varble filed a complaint seeking to have the remainder of his attorney's fees in the amount of $87,095.74 declared nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code alleging that the Debtor obtained these services by false pretenses, false misrepresentations, or actual fraud. Varble also contended in this complaint that any fees associated with services rendered within 90 days prior to Debtor's bankruptcy filing should be excepted from discharge under § 523(a)(2)(C)(I) of the Bankruptcy Code.

---

[2] Varble contends that Chase incurred legal fees in the amount of $16,275.00 after Chase filed for bankruptcy.

[3] The following convention is used in citing to the trial record. The March 1, 2007 hearing transcript is cited by date and page. For example, "Tr. (3/1/07) at 18" refers to page 18 of the March 1, 2007 transcript.

3

### III. DISCUSSION

**A.    Section 523(a)(2)(A) of the Bankruptcy Code**

Section 523(a) specifies which of the debtor's debts are excepted from discharge. Section 523(a)(2)(A) provides that an individual debtor will not be discharged from any debt for "services" obtained by (1) false pretenses, (2) a false representation, or (3) actual fraud - other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). The three terms used in § 523(a)(2)(A) embody different concepts, and Congress' "use of the disjunctive 'or' evidences [an intent] to deny a discharge under any [such term] . . . ." *Sandak v. Dobrayel* (*In re Dobrayel*), 287 B.R. 3, 12 (Bankr. S.D.N.Y. 2002) (citing *In re Soliz*, 201 B.R. 363, 369 (Bankr. S.D.N.Y. 1996)); *Colonial Nat'l Bank USA v. Leventhal* (*In re Marc Leventhal*), 194 B.R. 26, 28 (Bankr. S.D.N.Y. 1996) ("Section 523(a)(2)(A) speaks of false pretenses, a false representation, or actual fraud, evidencing a statutory distinction among the three.") (quotations omitted).

In view of the "fresh start" policy of the Bankruptcy Code, exceptions to the dischargeability of debts should be narrowly construed in favor of a debtor. *Nat'l Union Fire Ins. Co. v. Bonnanzio* (*In re Bonnanzio*), 91 F.3d 296, 300 (2d Cir. 1996). The plaintiff has the burden of demonstrating nondischargeability under this section by a preponderance of the evidence. *In re Dobrayel*, 287 B.R. at 12. Thus, Varble has the burden of demonstrating nondischargeability as to each of these causes of action by a preponderance of the evidence.

4

### i. False Pretenses

Under § 523(a)(2)(A), the term "false pretenses" is defined as "conscious deceptive or misleading conduct calculated to obtain, or deprive, another of property." *Gentry v. Kolver* (*In re Kovler*), 249 B.R. 238, 261 (Bankr. S.D.N.Y. 2000). A false pretense has also been held to be an implied misrepresentation or conduct intended to create a false impression. *Voyatzoglou v. Hambley* (*In re Hambley*), 329 B.R. 382 (Bankr. E.D.N.Y. 2005) (citing *In re Bozzano*, 173 B.R. 990, 993 (Bankr. M.D.N.C. 1994)). In effect, a false pretense is designed to convey an impression without an oral representation. *See Wings v. Hoover* (*In re Hoover*), 232 B.R. 695, 700 (Bankr. S.D.Ohio 1999); *Bobilya Chrysler v. Gross* (*In re Gross*), 175 B.R. 277 (Bankr. N.D.Ind. 1994) (stating that causes of action for "false pretenses" and "false representations" under § 523(a)(2)(A) are two distinct actions; the former involves implied misrepresentations, while the latter deals with expressed, either oral or written, misrepresentations).

In order to establish that a debt is nondischargeable as a debt for money obtained by false pretenses, the plaintiff must establish (1) an implied misrepresentation or conduct by the defendant; (2) promoted knowingly and willingly by the defendant; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiff; (4) which wrongfully induced the plaintiff to advance money, property, or credit to the defendant. *In re Dobrayel*, 287 B.R. at 12.

Varble has not demonstrated that the Debtor obtained his services through false pretenses. Specifically, Varble has not presented any evidence that would support a finding that the Debtor made implied misrepresentations or engaged in conduct that fostered a false or misleading impression with respect to the Debtor's financial

5

wherewithal. Rather, Varble points to the Debtor's written and oral statements that he was going to pay for Varble's legal services. *See, e.g.,* Tr. (3/1/07) at 18, 19, and 24. As discussed below, these misrepresentations are actionable, if at all, under the "false representation" and "actual fraud" prongs of § 523(a)(2)(A). For these reasons, the Court holds that the debt cannot be exempted from discharge under the "false pretenses" prong of § 523(a)(2)(A).

### ii.     False Representation

A court can find a false representation if the plaintiff presents proof that the defendant (1) made a false or misleading statement; (2) with the intent to deceive; and (3) in order for the plaintiff to turn over money or property to the defendant. *In re Dobrayel*, 287 B.R. at 12 (citing BLACK'S LAW DICTIONARY at 619 (7th ed. 1999)). With respect to the second element, "intent to deceive" may be established through circumstantial evidence and inferred from the totality of the evidence presented. *Hong Kong Deposit & Guaranty Ltd. v. Shaheen (In re Shaheen)*, 111 B.R. 48, 53 (S.D.N.Y. 1990) ("[I]ntent to deceive may be inferred when the totality of the circumstances presents a picture of deceptive conduct by the debtor, which indicates that he did intend to deceive and cheat the [creditor]."). The plaintiff must also establish justifiable reliance. *See In re Gonzalez*, 241 B.R. 67, 71 (S.D.N.Y. 1999) ("To exempt a debt from discharge under Section 523(a)(2)(A), the non-debtor's reliance must be 'justifiable' under the circumstances.") (citing *Field v. Mans*, 516 U.S. 59 (1995)).

6

### a. Absence of a False Statement or Intent to Deceive

Although Varble presented evidence that the Debtor made oral and written statements that he was going to pay for Varble's services, such statements were not proven to be false when made and were not made with an intent to deceive. The record reflects that the Debtor intended to pay for Varble's legal services from the outset. His intentions are reflected by the fact that he made numerous payments towards his outstanding legal bills including but not limited to: (1) a payment in the amount of $7,500.00 after he received the March 2005 bill, (2) a payment of $3,500.00 in May 2005, (3) payments totaling $3,500.00 in October 2005, and (4) a $1,000.00 payment on November 22, 2005. *See* Tr. (3/1/07) at 17, 18, and 26. Ultimately, the Debtor made payments towards his outstanding legal bills totaling $23,500.00 over the course of Varble's representation. *See* Tr. (3/1/07) at 73. These facts alone support the Court's conclusion that Varble did not prove by a preponderance of evidence that the Debtor knowingly made false representations with the intent to induce Varble to provide future legal services. *See, e.g.*, *Carrol v. Vernon* (*In re Vernon*), 192 B.R. 165, 172-73 (Bankr. N.D.Ill. 1996) (holding that plaintiff did not prove by a preponderance of evidence that the debtor knowingly made any false representation of future payment to induce future legal services where there was evidence of repeated payments by debtor to the plaintiff over the nine months prior to the filing of her bankruptcy petition).

Further, the Debtor stated to Varble in October 2004 that he wanted to pay Varble from the proceeds of the sale of the marital residence that was to be sold pursuant to a stipulation entered in the Columbia County Supreme Court (the "Order"). *See* Tr. (3/1/07) at 44 - 45. The Debtor even instructed Varble to follow through with this Order

7

so that he could be paid for his legal services. *Id.* at 45. Varble testified that being paid from the sale of the marital residence was not an unusual method of payment as he has personally been paid out of the sale of martial residences in the past and that it is a fairly common practice. *Id.* at 18. The marital residence was not sold and Chase's interest subsequently became property of the Debtor's bankruptcy estate. *Id.* at 45. Varble did not explain why he did not compel the Debtor's spouse to sell the marital residence in accordance with the Order. *Id.* at 46. In light of the foregoing, the Court finds that Varble has failed to carry his burden of establishing that the Debtor intentionally made these false representations.

### b. Absence of Justifiable Reliance

Varble has not established that he justifiably relied on the Debtor's statements. In discussing what constitutes "justifiable reliance" for purposes of § 523(a)(2)(A), the Supreme Court stated:

> Although the plaintiff's reliance on the misrepresentation must be justifiable . . . this does not mean that his conduct must conform to the standard of the reasonable man. Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases. Justifiability is not without some limits, however. . . . [A] person is required to use his senses, and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.

*Field*, 516 U.S. at 70-72 (citations and quotations omitted).

The record clearly reflects that starting at or around the time the Debtor engaged Varble to represent him in the state court proceedings, Varble was put on notice that the Debtor may not have the financial wherewithal to pay for his legal services. For instance, at or around the time Varble began representing the Debtor, Varble testified that he had

8

copies of the Debtor's net worth statement including a tax return from 2001 evidencing a $88,000 loss. *See* Tr. (3/1/07) at 38. Varble also learned in July 2004, a month after he was engaged by the Debtor, that the Debtor's marital residence had fallen into foreclosure, *see* Tr. (3/1/07) at 40, and that there had been an application to hold the Debtor in contempt for non-payment of child support, *see* Tr. (3/1/07) at 39.

Further, on numerous occasions the Debtor represented to Varble that he was on the verge of filing for bankruptcy. For example, on March 1, 2005, the Debtor sent an e-mail to Varble mentioning the possibility of filing for bankruptcy. *See* Chase Exhibit 11. Varble even contacted colleagues requesting the name of a reputable bankruptcy attorney for the Debtor. *See id.* These facts lead the Court to conclude that Varble was on notice that payment of his fees would not be forthcoming and, therefore, he did not justifiably rely on the Debtor's alleged misrepresentations. *See, e.g., Carrol v. Vernon* (*In re Vernon*), 192 B.R. at 172-73 (holding that law firm failed to establish the element of "justifiable reliance" where it was "on repeated and direct notice that Defendant was considering bankruptcy following the divorce" thereby posing "a threat to its fees, both those earned in the past and those about to be earned"); *Marra v. Kroen* (*In re Kroen*), 280 B.R. 347, 354 (Bankr. D.N.J. 2002) (holding that attorney could not establish the necessary element of justifiable reliance where the attorney who represented the debtor in a divorce proceeding allegedly relied upon a promise by debtor that he would not seek to discharge the debt for legal fees in bankruptcy because an attorney should not "pin his hopes on a client's promise-whether it be a promise to pay or to waive discharge-without fully recognizing the inherent financial risk in going forward with a long-term

9

litigation"). For all of these reasons, this debt cannot be excepted from discharge under the "false representation" prong of § 523(a)(2)(A).

### iii. Actual Fraud

"[A]ctual fraud" generally requires proving the "five fingers of fraud." *In re Dobrayel*, 287 B.R. at 12. The Court looks to the common law of torts, as embodied in the Restatement (Second) of Torts, in construing the elements of § 523(a)(2)(A). *Weiss v. Alicea* (*In re Alicea*), 230 B.R. 492, 500 (Bankr. S.D.N.Y. 1999) (citing *Field v. Mans*, 516 U.S. 59, 70 (1995)). Under § 525 of the RESTATEMENT, the elements of common law fraud are (1) a misrepresentation, (2) fraudulent intent, or scienter, (3) intent to induce reliance, (4) justifiable reliance, and (5) damage. *Accord In re Alicea*, 230 B.R. at 500.

With respect to the second element, a misrepresentation is made with fraudulent intent if the maker knows or believes that his statements are false. *Taub v. Morris* (*In re Morris*), 252 B.R. 41, 48 (Bankr. S.D.N.Y. 2000); *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 276 (2d Cir. 1992). As stated by the court in *In re Alicea*:

> The test may be stated as follows. If, at the time he made his promise, the debtor did not intend to perform, then he has made a false representation (false as to his intent) and the debt that arose as a result thereof is not dischargeable (if the other elements of § 523(a)(2)(A) are met). <u>If he did so intend at the time he made the promise, but subsequently decided that he could not or would not so perform, then his initial representation was not false when made.</u>

*Id.* at 501 (citing *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997)) (emphasis added).

Here, Varble has not presented evidence that the Debtor made false statements with the intent to deceive and induce reliance. As discussed above, the Debtor ultimately paid for a portion of Varble's fees for legal services. There is no evidence to suggest that

10

the Debtor did not intend to pay for Varble's services at the time he made the representations. The fact that the Debtor subsequently decided he would not or could not pay for these services is of no consequence. *See Alicea*, 200 B.R. at 501. Further, Varble has not established that he justifiably relied on the Debtor's statements. For these reasons, the Court holds that this debt cannot be excepted from discharge under the "actual fraud" prong of § 523(a)(2)(A).

**B.     Section 523(a)(2)(C)(I) of the Bankruptcy Code**

Varble performed $47,975.00 worth of legal services within the 90 days prior to Debtor's bankruptcy filing and contends that such fees are presumed to be nondischargeable under § 523(a)(2)(C)(I) of the Bankruptcy Code. Section 523(a)(2)(C)(I) provides: "[C]onsumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief under this title are presumed to be nondischargeable . . . ." 11 U.S.C. § 523(a)(2)(C)(I). The Bankruptcy Code defines "luxury goods and services" in the negative. Section 523(a)(2)(C)(ii)(II) merely provides that the term "luxury goods" does not include "goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor . . . ." When determining whether services can be characterized as "luxury . . . services" courts look to the circumstances of each particular case to see if the services were "extravagant," "indulgent," or "nonessential." *See Montgomery Ward & Co. v. Blackburn* (*In re Blackburn*), 68 B.R. 870 (Bankr. N.D.Ind. 1987) ("Luxury in itself implies extravagance, superfluousness, self-indulgence; going beyond or overflowing an implicit, indeterminate level of comfort.").

11

The Court finds that the legal services performed by Varble fall far short of being characterized as "extravagant," "indulgent," or "nonessential." Indeed, courts have routinely held that legal services incurred in connection with a divorce proceeding do not qualify as "luxury . . . services" within meaning of § 523(a)(2)(C)(I). *See, e.g, Shah v. Shaw* (*In re Shaw*), 294 B.R. 652 (Bankr. W.D.Pa. 2003) (holding that legal fees incurred in connection with debtor's appeal of a divorce court order were not in the nature of "luxuries" under 11 U.S.C. § 523(a)(2)(C)); *In re Vernon*, 192 B.R. at 170 ("The provision of legal services for divorce are not for some extravagant, indulgent, or non-essential object. . . . Divorce serves a necessary family function--to end a dysfunctional family and resolve obligations of each spouse. Thus, the services involved here were not of a luxury nature."). Therefore, the Court concludes that such fees are not excepted from discharge under § 523(a)(2)(C)(I) of the Bankruptcy Code.

**C.     Plaintiff's Postpetition Fees Are Not Discharged Under § 727(b) of the Bankruptcy Code**

As stated above, Varble performed services for the Debtor, both pre and postpetition. Chase engaged Varble in June 2004 agreeing to pay him $250.00 per hour for services performed. The question becomes whether Varble's claim for postpetition fees is subject to discharge under § 727(b) of the Bankruptcy Code. Section 727(b) of the Bankruptcy Code states: "Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter . . . ." *Id*. The Bankruptcy Code defines a "debt" as "liability on a claim." 11 U.S.C. § 101(12). A "claim" is defined as a:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, <u>contingent</u>, matured, unmatured, disputed,

12

>   undisputed, legal, equitable, secured, or unsecured; or (B) right to an
>   equitable remedy for breach of performance if such breach gives rise to a
>   right to payment, whether or not such right to an equitable remedy is
>   reduced to judgment, fixed, contingent, matured, unmated, disputed,
>   undisputed, secured, or unsecured.

11 U.S.C. § 101(5) (emphasis added).  The Supreme Court has stated that the "plain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation . . . ." *F.C.C. v. NextWave Personal Communications Inc.*, 537 U.S. 293, 302-03 (2003) (citing *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990)). The Bankruptcy Code does not define the term "contingent" but the court has stated that a claim is "contingent" when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event. *In re Caldor, Inc.*, 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999).  Thus, the issue raised by these circumstances is whether the legal fees for services performed postpetition on an hourly basis constitute a contingent claim - or right to payment - that arose before the date Debtor filed his chapter 7 bankruptcy petition.

   The Court has not found any cases on point addressing the issue whether a debt arising from the performance of legal services on an hourly basis postpetition pursuant to a prepetition agreement are contingent claims subject to discharge under § 727 of the Bankruptcy Code.  Although other jurisdictions have addressed the issue whether a debt for legal services provided to a debtor postpetition pursuant to a prepetition agreement are subject to discharge under § 727 of the Bankruptcy Court, and reached conflicting results, these cases are distinguishable because the agreements in those cases provided for an agreed upon lump-sum fee for rendering both prepetition and postpetition services in connection with a chapter 7 case.  *Compare Gordon v. Hines* (*In re Hines*), 147 F.3d

13

1185 (9th Cir. 1998) (holding that a prepetition fixed fee contract for postpetition legal services does not give the attorney a "claim" within the meaning of § 101(5)(A) because it is the rendition of services that creates the claim, not the execution of a fee agreement and, therefore, if postpetition services are rendered, the attorney does not have a prepetition (or dischargeable) claim), *with Bethea v. Robert J. Adams & Associates*, 352 F.3d 1125 (7th Cir. 2003) (holding that prepetition and postpetition debts for legal fees pursuant to a prepetition fixed fee agreement are subject to discharge and disagreeing with *In re Hines* because "nothing in the Code permits a categorical exception for any kind of debt other than one listed in § 523 – and [postpetition] legal fees are not on that list"); *see also Rittenhouse v. Eisen*, 404 F.3d 395, 397 (6th Cir. 2005) (stating that postpetition attorneys fees are not dischargeable). *Cf. In re Fickling*, 361 F.3d 172, 176 (2d Cir. 2004) (stating that postpetition attorneys fees are not dischargeable).

      The Court does not need to weigh-in in this case on this circuit split. Ultimately, the Court adopts the rationale set forth in Judge Tashima's concurrence in *Hines* and holds that fees owed for legal services performed postpetition on an hourly basis pursuant to a prepetition agreement do not constitute a contingent claim – or right to payment – that arose before the date Debtor filed his chapter 7 bankruptcy petition. Judge Tashima concluded that the attorney in *Hines* accrued a "claim" only when he actually provided the postpetition services for which the debtor agreed to pay him. 147 F.3d at 1192. Judge Tashima further stated that the contingency referred to under § 101(5)(A) of the Bankruptcy Code cannot be one party's decision to perform on the contract. *Id.* Following this rationale, the Court holds that Varble had "an enforceable obligation" – a "right to payment" – only after he actually rendered the postpetition legal services and the

14

fact that his right to payment was contingent upon Varble actually performing the services is not sufficient to bring this claim within § 101(5)(A) of the Bankruptcy Code. As such, the fees attributable to services performed postpetition cannot be discharged under § 727(b) of the Bankruptcy Code. Varble is left to his state court remedies if he decides to pursue this claim; the only thing the Court decides here is that the claim, if any, cannot be discharged under § 727(b) of the Bankruptcy Code.

### IV.  CONCLUSION

For the foregoing reasons, the Court holds that (1) Varble's prepetition fees are not excepted from discharge pursuant to § 523(a)(2)(A) & (C)(I) of the Bankruptcy Code and, therefore, may be discharged under § 727(b) of the Bankruptcy Code, and (2) Varble's postpetition fees are not discharged under § 727(b) of the Bankruptcy Code.

**IT IS SO ORDERED**

DATED:    New York, New York            ____/s/Martin Glenn_____
          May 18, 2007                   THE HONORABLE MARTIN GLENN
                                         United States Bankruptcy Judge